# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Scott Ledford, Employee, Petitioner,

v.

Department of Public Safety, Employer, and State
Accident Fund, Carrier, Respondents.

Appellate Case No. 2018-001677

--------

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

--------

Appeal from The Workers' Compensation Commission

--------

Opinion No. 27920
Heard April 18, 2019 – Filed October 2, 2019

--------

## REVERSED, VACATED, AND REMANDED

--------

James K. Holmes, of The Steinberg Law Firm, LLP, of
Charleston, and E. Hood Temple, of Hatfield Temple,
LLP, of Florence, both for Petitioner.

John Gabriel Coggiola and Sarah C. Sutusky, of Willson
Jones Carter & Baxley, P.A., of Columbia, for
Respondents.

--------

**PER CURIAM:** We granted Scott Ledford's petition for a writ of certiorari to review the Court of Appeals' decision in *Ledford v. Department of Public Safety*, Op. No. 2018-UP-280 (S.C. Ct. App. filed June 27, 2018). We reverse the decision of the Court of Appeals, vacate the orders of Commissioner Susan Barden and the Workers' Compensation Commission Appellate Panel ("Appellate Panel"), and remand for a new hearing before a single commissioner.

Scott Ledford is a former lance corporal with the South Carolina Highway Patrol. While employed as a highway patrolman, Ledford was injured in two separate work-related accidents. In July 2010, Ledford sustained injuries to his spine after being tasered during a training exercise. Ledford settled the 2010 claim with Respondents. In March 2012, Ledford was involved in a motorcycle accident while attempting to pursue a motorist.

Following the second accident, Ledford filed two separate claims for workers' compensation benefits. One claim alleged injuries to his right leg and lower back stemming from the 2012 motorcycle accident. The other claim related to Ledford's 2010 Taser accident and alleged a change of condition for the worse. The claims were eventually consolidated, and the parties appeared before Commissioner Andrea Roche. Commissioner Roche declined to find Ledford suffered a change of condition; however, she found Ledford was entitled to medical benefits for injuries to his right leg and aggravated pre-existing conditions in his neck and lower back due to the motorcycle accident. Neither party appealed Commissioner Roche's order.

In January 2014, Respondents filed a Form 21 requesting to stop payment of temporary compensation, a permanency determination, and credit for payments made after Ledford reached maximum medical improvement ("MMI"). Commissioner Barden held a hearing on Respondents' Form 21 in August 2014.

Following the hearing—but prior to the issuance of a final order—Ledford filed a motion to recuse Commissioner Barden. According to Ledford's motion, Commissioner Barden requested a phone conference with the parties a month after the hearing. During this conference, Commissioner Barden allegedly threatened criminal proceedings against Ledford if the case was not settled; indicated that she engaged in her own investigation and made findings based on undisclosed materials

outside the record; suggested Ledford used "creative accounting" in his tax returns;[1] and questioned Ledford's credibility regarding his claims of neck pain. Ledford contended any one of these grounds was sufficient to warrant recusal.

In support of his motion to recuse, Ledford submitted an affidavit from his accountant stating Ledford's tax returns were prepared in accordance with Generally Accepted Accounting Principles. Ledford also submitted an affidavit and memorandum from his attorney, E. Hood Temple, who participated in the call with Commissioner Barden and prepared the memorandum immediately afterwards to document what had transpired.

In Temple's affidavit, he alleged Commissioner Barden stated "while [Ledford] may be a former member of the South Carolina Highway Patrol ACE Team, he was not a member of the 'Truth Team.'" Temple further claimed Commissioner Barden indicated that she "did not believe anything [Ledford] said except his name and age." Temple also alleged Commissioner Barden stated that she realized the State Accident Fund would likely make a minimal offer due to the conference call, and she would have an ongoing duty to report Ledford to the Attorney General for prosecution unless Ledford accepted the Fund's offer. According to Temple, the State Accident Fund made a minimal settlement offer following the phone conference.

Commissioner Barden denied the troubling statements in Temple's affidavit. Commissioner Barden labeled the affidavit as containing "false statement[s] of fact and a frivolous allegation[,]" and maintained that she "did not manifest bias or prejudice against [Ledford], but simply informed the parties of the inconsistencies" in his testimony and of her duty to report any suspicions of false statements and misrepresentations. Commissioner Barden denied the motion to recuse.

Commissioner Barden proceeded to rule on the merits of the claim, determining that Ledford was entitled to 0% permanent impairment to his spine, and that Respondents were not liable for any additional medical treatment following the date of MMI other than physical therapy and injections. In her order, Commissioner Barden impugned Ledford's credibility regarding his ability to work, the extent of his injuries, and his earnings from and participation in his landscaping business.

---

[1] Ledford owned and operated a landscaping business to supplement his income as a highway patrolman. Respondents submitted Ledford's 2012 and 2013 tax returns as an exhibit in the underlying workers' compensation proceeding.

Ledford appealed Commissioner Barden's rulings to the Appellate Panel, which affirmed in part and reversed in part. Notably, the Appellate Panel reversed Commissioner Barden's finding regarding permanency and determined Ledford sustained 15% additional permanent partial disability to his back and was entitled to 45 weeks of compensation. The Appellate Panel also reversed Commissioner Barden's decision regarding when Respondents were entitled to stop paying temporary compensation. However, the Appellate Panel adopted most of Commissioner Barden's factual findings, including those questioning Ledford's credibility.

The Court of Appeals affirmed the Appellate Panel and held: (1) Commissioner Barden was not required to recuse herself; (2) substantial evidence supported the Appellate Panel's decision to reverse Commissioner Barden's permanency determination; and (3) substantial evidence supported the Appellate Panel's findings that Ledford was not credible and his landscaping business remained lucrative following the injury. *Ledford v. Dep't of Pub. Safety*, Op. No. 2018-UP-280 (S.C. Ct. App. filed June 27, 2018).

We hold the Court of Appeals erred in finding Commissioner Barden was not required to recuse herself. There was evidence in the record—including Temple's affidavit—to support Ledford's contention that Commissioner Barden threatened criminal proceedings unless the case settled. Given the serious allegations lodged against Commissioner Barden, coupled with Commissioner Barden's adamant denial of threatening Ledford with criminal prosecution unless he accepted the Fund's settlement offer, we questioned Respondent's counsel, Sarah C. Sutusky, at oral argument. Ms. Sutusky was a party to the conference call that underlies the recusal motion, and she corroborated the contents of Temple's affidavit.[2]

We are deeply concerned by Commissioner Barden's conduct in this matter. We first address her comments during the phone conference, especially those regarding a "duty" to report Ledford for criminal prosecution. Commissioner Barden's remarks essentially left Ledford with two equally undesirable options: (1) move forward with his claim and risk being referred for criminal prosecution; or (2) settle the case and forfeit his right to have his claim adjudicated, and concomitantly Commissioner Barden would ignore her purported "duty" to report

---

[2] We commend Ms. Sutusky for her candor and professionalism.

Ledford for criminal prosecution.[3]  Even if Commissioner Barden's statements were not intended as bona fide threats, they were indisputably coercive.  *See* Commentary to Section 3B(8), Code of Judicial Conduct (CJC), Rule 501, SCACR ("A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.").[4]

Our Code of Judicial Conduct states:  "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."  Section 3E, CJC, Rule 501, SCACR.  In our view, Commissioner Barden's behavior in this case would undoubtedly lead one to reasonably question her impartiality.  Therefore, she should have recused herself.[5]  Commissioner Barden's conduct was quite simply unacceptable and offensive to the ideals of a fair and impartial judiciary.

This Court fully recognizes and supports the role that judges, particularly trial court judges, have in facilitating the resolution of cases.  Once a case is assigned to a judge or the trial is underway, the parties (through counsel) will often confer with the judge on a host of matters involving the case.  Those discussions may solicit the judge's input on resolving the case; judges who accept the invitation to engage in such discussions may necessarily convey a preliminary view of the merits of a claim or defense, which may indirectly include an assessment of a party's or a witness's credibility.  This role of a trial court is both accepted and, quite frankly, invited.  Nothing in our decision today should be construed to discourage this practice.  We are addressing the discrete situation where a trial court judge (a workers'

---

[3] It is interesting that Commissioner Barden presented Ledford with one choice involving a referral to the Attorney General's office and a second choice involving no such referral.  Even assuming a duty to report Ledford for false statements or misrepresentations properly arose, the obligation would be absolute.  Commissioner Barden's duty would not simply go away in the event of a settlement.

[4] Workers' compensation commissioners "are bound by the Code of Judicial Conduct, as contained in Rule 501 of the South Carolina Appellate Court Rules."  S.C. Code Ann. § 42-3-250(A) (2015).

[5] We find the recusal issue dispositive; therefore, we need not address the remaining issues in the Court of Appeals' decision.  *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).

compensation commissioner) threatened criminal prosecution against a party if that party did not settle the case.

Ledford's counsel provided an opportunity for Commissioner Barden to right her wrong by moving for recusal. Instead of stepping aside, Commissioner Barden became more abusive and strident in both her ruling on the recusal motion and her final order. Commissioner Barden's false affidavit is appalling, and it compounds the initial error.

Accordingly, we reverse the decision of the Court of Appeals, vacate the orders of Commissioner Barden and the Appellate Panel, and remand for a new hearing before a single commissioner.[6]

**REVERSED, VACATED, AND REMANDED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**

---

[6] Ledford specifically requested this relief in his brief. Additionally, in response to pointed questioning by the Court during oral argument, Ledford insisted that he desired this remedy.